UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Residential Funding Company, LLC,                    Civ. No. 13-3457 (PAM/FLN)

Plaintiff,

v.

Embrace Home Loans, Inc., f/k/a
Advanced Financial Services, Inc.,

Defendant.

_____

Residential Funding Company, LLC,                    Civ. No. 13-3509 (PAM/FLN)

Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

Hometown Mortgage Services, Inc.,

Defendant.

_____

Residential Funding Company, LLC,                    Civ. No. 13-3545 (PAM/FLN)

Plaintiff,

v.

Circle Mortgage Corp.,

Defendant.

_____

This matter is before the Court on Motions to Dismiss filed by each of the Defendants

in the above-captioned cases.  Although the Motions were filed and briefed separately, they

raise substantially the same legal issues and the Court consolidated the Motions for purposes of oral argument.  For the reasons that follow, the Motions are granted in part and denied in part.

**BACKGROUND**

Plaintiff Residential Funding Company, LLC ("RFC") was, until it declared bankruptcy in May 2012, an issuer of mortgage-backed securities. (Am. Compl. (Docket No. 28) ¶ 2.)[1]  RFC purchased residential mortgages from hundreds of financial institutions throughout the country and aggregated those mortgages into residential mortgage-backed securities.  (Id. ¶ 3.)  When the housing market declined and many of the original mortgages turned out to be bad loans, RFC found itself embroiled in lawsuits brought by investors in the mortgage-backed securities.  (Id. ¶ 7.)  RFC seeks to recoup its losses from the original mortgage-issuing institutions, such as the three Defendants here.  According to RFC, the mortgages these institutions issued were defective and did not comply with the underwriting and originating standards set forth in the parties' agreements, which are all various versions of a so-called "Client Guide."  (Id. ¶¶ 7, 18, 24.)

As part of its Chapter 11 bankruptcy plan, RFC entered into a global settlement of the lawsuits arising out of the mortgage-backed securities.  (Id. ¶ 10.)  The bankruptcy court confirmed RFC's Chapter 11 plan on December 11, 2013.  (Id.)  These cases are three of the more than 80 similar cases filed or removed to this District shortly after the bankruptcy

---

[1]  For purposes of background information, the Amended Complaints in the three matters at issue here are identical.

plan's confirmation.[2]  Although RFC initially sought to transfer venue of the cases to the

Southern District of New York, RFC has withdrawn those motions to transfer.  (June 5, 2014,

Letter from Jessica J. Nelson (Docket No. 42 in 13-3457; Docket No. 56 in 13-3509; Docket

No. 45 in 13-3545).)

RFC's Amended Complaints in each matter raise claims for breach of contract and for

indemnification against the financial institutions.  Defendants argue that the allegations in

the Amended Complaints are insufficient to put Defendants on notice of the claims against

them, and that some or all of RFC's claims are barred by the applicable statute of limitations.

**DISCUSSION**

**A.      Standard of Review**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts

in the Complaint to be true and construes all reasonable inferences from those facts in the

light most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch.

Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs

draw from the facts pled.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

---

[2]  There are three additional RFC cases assigned to the undersigned:  Residential Funding Co. v. PMC Bancorp., Civ. No. 13-3471 (PAM/FLN); Residential Funding Co. v. Lake Forest Bank & Trust Co., Civ. No. 13-3497 (PAM/FLN); and Residential Funding Co. v. E-Loan, Civ. No. 14-1739 (PAM/SER).  Defendant PMC Bancorp. has not entered an appearance in that case and is in default, although RFC has not yet moved for the entry of default judgment.  RFC filed an amended complaint against Lake Forest Bank on June 2, 2014, too late for any responsive pleading to be included in the Motions discussed here.  Also on June 2, RFC removed the E-Loan matter to this Court from Minnesota state court.

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings.  See Fed. R. Civ. P. 12(d).  The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records.  Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550 U.S. at 556.

**B.     Motions to Dismiss**

As noted, these three Defendants have brought motions to dismiss that are substantially the same.  They argue in the main that the allegations in RFC's Amended Complaints are insufficiently pled under Rule 8(a), and that some or all of RFC's claims are time-barred.

    **1.**    **Embrace Home Loans, 13-3457**

Embrace sold more than 3,500 mortgage loans to RFC over a ten-year period, from 1997 to 2007. (Am. Compl. ¶ 4.) RFC contends in its Amended Complaint that "hundreds" of these loans were defective. (Id. ¶ 41.) The Amended Complaint points to seven specific defective loans "[b]y way of example" (id. ¶¶ 43, 54) but does not specifically state how any of the remaining loans were allegedly defective. And the Amended Complaint acknowledges that Embrace repurchased three of the seven specific loans to which RFC points as examples. (Id. ¶ 43.) Despite the repurchases, RFC contends that because the defective loans were included in RFC's securitization scheme, RFC has suffered "additional liabilities and losses for which Embrace has not compensated RFC." (Id. ¶ 43.a.) The Amended Complaint does not specify what those additional liabilities and losses are.

RFC raises two claims against Embrace. The first is for breach of contract alleging that Embrace breached the representations and warranties in the parties' contract by selling loans to RFC that did not comply with those representations and warranties. (Id. ¶ 82.)[3] Count Two contends that Embrace agreed to indemnify RFC against the damages RFC has incurred in these lawsuits. (Id. ¶¶ 87-88.) The Amended Complaint seeks damages and a declaratory judgment that Embrace must indemnify RFC.

---

[3] RFC now contends that this claim is actually a breach-of-warranty claim, but that is not what RFC pled in the Amended Complaint.

a.    Statute of Limitations

Embrace[4] contends that RFC's breach-of-contract claim is time-barred, either in whole or in part.  Minnesota law requires that an action for breach of contract be "commenced within six years" of the breach.  Minn. Stat. § 541.05, subd. 1; see also Pederson v. Am. Lutheran Church, 202 N.W.2d 887, 889 (Minn. Ct. App. 1987) ("A cause of action for breach of contract accrues at the time of the alleged breach.").  The Amended Complaint alleges that the breach-of-contract claim arises out of Embrace's alleged breach of representations and warranties that were "material terms in RFC's agreement to acquire the mortgage loans from Embrace."  (Am. Compl. ¶ 25.)  Thus, the breaches occurred at the sale of the loans.

RFC now contends that its breach-of-contract claim also alleges that Embrace violated its continuing obligations under the Client Guide.  The Client Guide provides that Embrace "will promptly notify [RFC] of any occurrence, act, or omission regarding [Embrace], the Loan, the Mortgaged Property or the Mortgagor of which [Embrace] has knowledge, which . . . may materially affect [Embrace], the Loan, the Mortgaged Property, or the Mortgagor." (Id. Ex. B § 2A.201(M).)  According to RFC, it alleges that Embrace breached this provision by failing to provide RFC with unspecified information that materially affected the loans sold.  The unspecified breaches of this continuing obligation allegedly occurred post-sale;

---

[4] All moving Defendants make similar arguments, although Hometown contends that RFC's indemnification claim is also untimely.  The following discussion thus applies to all Defendants.  Hometown's argument with respect to the statute of limitations for RFC's indemnification claim will be discussed in subsection 2 below.

because Embrace's obligation was ongoing, breaches of this provision may continue to this day.

In support of this argument, RFC points to paragraphs 19 through 21 of its Amended Complaint.  These paragraphs allege that the loans Embrace sold to RFC had an aggregate principal balance of $390 million (id. ¶ 19); that Embrace had the "initial responsibility" for getting information from the borrower and "primary responsibility" for underwriting the loan (id. ¶ 20); and that Embrace knew that, once the loans were sold, RFC would pool the loans into collateral underlying mortgage-backed securities.  (Id. ¶ 21.)  Nowhere in these three paragraphs, or indeed anywhere else in the Amended Complaint, does RFC mention any continuing obligations or contend that Embrace breached those continuing obligations so as to forestall the running of the statute of limitations.

Nor would such an allegation be consistent with the other allegations in the Amended Complaint.  The Amended Complaint lists the type of defects in the underlying loans that caused Embrace to breach the parties' agreements:  "The types of defects varied, but included income misrepresentation, employment misrepresentation, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents, among others."  (Id. ¶ 42.)  These are all defects that occurred at each loan's inception, and the gravamen of RFC's claims is that Embrace knew or should have know of these defects and failed to disclose them to RFC at the time of the loans' sale to RFC, in violation of the parties' agreements.  It is beyond doubt that the breaches of contract about which the Amended Complaint complains happened when

Embrace sold each allegedly defective loan to RFC.  RFC's cause of action arising out of those breaches thus accrued at that time.

Because Embrace sold the last loan to RFC in June 2007, RFC was obliged to file suit within six years, or by June 2013.  As noted, the instant matter was not filed until December 2013.  RFC argues that its filing for bankruptcy protection in May 2012 tolled the statute of limitations, making its breach-of-contract claims timely at least for loans that were sold after May 2006.

Section 108(a) of the Bankruptcy Code provides that if a limitations period "has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of" the expiration of the limitations period or two years after the final approval of the reorganization or liquidation plan.  11 U.S.C. § 108(a)(1)-(2).  By its terms and other provisions of the Code, only the trustee or the debtor-in-possession may avail themselves of this tolling provision.  See 11 U.S.C. § 1107(a) (giving debtor-in-possession the same rights as a trust with respect to § 108(a)).

RFC argues that it is the debtor-in-possession, or was until the effective date of the bankruptcy plan, December 17, 2013.  This action was filed on December 13, 2013, and thus according to RFC, it was within § 108(a)'s safe harbor.  For its part, Embrace contends that the bankruptcy plan was confirmed on December 11, 2013, so that RFC was no longer the debtor-in-possession on the date the Complaint was filed.

Two recent Report and Recommendations from Magistrate Judges in this District have addressed the issue of tolling under § 108(a), with one finding that whether RFC was entitled

8

to avail itself of tolling is a question that should be resolved later in the litigation, and the other finding that RFC was the debtor-in-possession on December 13, 2013.  See Residential Funding Co. v. Wallick & Volk, Inc., No. 13cv3512 (MJD/JJG), Docket No. 67; Residential Funding Co. v. Gateway Bank, F.S.B., No. 13cv3518 (MJD/JSM), Docket No. 64 at 32.

Whether RFC was the debtor-in-possession on December 13, 2013, however, is not the operative question.  The question is whether, when RFC declared bankruptcy on May 14, 2012, RFC was entitled to rely on § 108(a)'s tolling provision.  The answer to that question is undoubtedly yes.  It is illogical to find that any action filed during the pendency of the bankruptcy is timely, but an action filed two days after the bankruptcy concludes is not timely.  The Bankruptcy Code does not encourage debtors to race to the courthouse with potential claims; indeed, the tolling provision is designed to avoid just such a race.  And here, the damages RFC incurred as a result of Defendants' alleged breaches were not known until the settlement with the securities investors was confirmed as part of RFC's bankruptcy plan. RFC may avail itself of § 108(a)'s tolling provision and its breach-of-contract claims arising out of loans sold to RFC on or before May 14, 2006, are timely.  However, RFC's breach-of-contract claim arising out of loans sold before May 14, 2006, will be dismissed with prejudice.

       b.    <u>Insufficient pleading</u>

Embrace contends that RFC's allegations are insufficiently pled under Rule 8(a) because they do not specify the loans at issue or the defects in those loans.  In other words, Embrace asserts that RFC has failed to allege exactly what Embrace did that violated the

parties' contract.  RFC counters that it alleges that other entities have done statistical sampling of loans that were pooled into mortgage-backed securities and have found defects in loans including Embrace's loans.

RFC's allegations with respect to Embrace's loans are troublingly vague.  For example, RFC contends that "almost a quarter" of the loans Embrace sold to RFC "sustained losses, collectively totaling in the hundreds of millions of dollars."  (Am. Compl. ¶ 39.)  But the fact that a loan might have sustained a loss does not necessarily mean that the loan was defective; for example, it could be that the borrower lost her job and defaulted on the loan.  Such an event would cause a loss but would not be a defect Embrace is obligated to cure.

The Amended Complaint goes on to allege that RFC performed an internal review and determined that "hundreds of the loans [Embrace] sold to RFC . . . violated the Client Guide and/or other representations or warranties."  (Id. ¶ 41.)  But RFC has not provided the results of that internal review to Embrace or to the Court.  Moreover, if RFC internally reviewed all or a portion of Embrace's loans closely enough to determine that the loans were defective, then RFC should have pled the specific defects in those loans, rather than merely pleading a laundry list of defects that may or may not appear in any of Embrace's loans.  (See id. ¶ 42 ("The types of defects varied, but included income misrepresentations, employment misrepresentation, owner occupancy misrepresentation, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents, among others.").)

Finally, the Amended Complaint contends that a number of loans defaulted "very shortly after origination" which, according to RFC, "often signal[s] fraud or other problems

in the origination and underwriting of loans." (Id. ¶ 42.) Again, this may or may not be true. A borrower may default shortly after receiving his mortgage for reasons completely unrelated to underwriting issues. These allegations do not inform either Defendants or the Court about what the defects are and which loans in particular are allegedly defective. Rather, RFC is asking the Court to make a leap: some of Embrace's loans sustained losses or went into early default, therefore Embrace breached its representations and warranties. This leap is unsupported by the facts pled.

RFC argues that multiple courts have faced pleadings similar to RFC's Amended Complaints and have determined that loan-by-loan pleading is unnecessary and perhaps even unwarranted. The decision RFC cites most often is Ace Securities Corp. Home Equity Loan Trust v. DB Structured Products, Inc., No. 13cv1869, 2014 WL 1116758 (S.D.N.Y. Mar. 20, 2014). But RFC's reliance on Ace is misplaced.

The parties in Ace are an investor in a mortgage-backed security and the sponsor of the securitization. (Ace Compl. ¶ 1.) The Ace complaint alleges that the plaintiff investor undertook "an exhaustive (and expensive) loan-by-loan forensic review" of the 3,386 mortgage loans that were pooled to create the mortgage-backed security (id. ¶ 2) and provided the defendant with "loan-by-loan supporting detail" regarding the more than 1,000 loans the forensic review determined were defective. (Id.) In other words, although the Ace complaint did not list each defective loan and its defect or defects in the body of the complaint, the defendant knew before the complaint was filed specifically what loans in the pool were alleged to be defective and likely knew why each loan was allegedly defective.

11

This is a far cry from the allegations in the Amended Complaint here.

In fact, the Court in <u>Ace</u> referenced the details in the complaint in determining that dismissal was not appropriate:

> [T]he Complaints do not simply assert, without more, that a certain number of loans were in breach of the representations and warranties. Instead, they say which representations and warranties were breached, and how. For example, in [one] action, the Complaint alleges that "208 Mortgage loans were past due . . . on the Closing Date." It also alleges that . . . [the defendant] represented that no loans were in breach of their payment obligations as of the closing date.

<u>Ace</u>, 2014 WL 1116758 at *12. Here, RFC's Amended Complaints do "simply assert, without more" that an unspecified number of loans were in breach of Embrace's obligations. RFC's pleading is insufficient.

RFC must re-plead to provide more factual specificity in support of its claims. Thus, the breach-of-contract claim for loans sold on or after May 14, 2006 and the indemnification claim will be dismissed without prejudice.

### 2.     Hometown Mortgage, 13-3509

According to the Amended Complaint, Hometown sold more than 1,200 mortgages to RFC. (Am. Compl. ¶ 4.) RFC points to four of the loans as examples of the allegedly "hundreds" of defective loans for which it brings its claims for breach of contract and indemnification. (<u>Id.</u> ¶¶ 41, 43.) For three of the four loans, however, RFC alleges that Hometown paid RFC "a portion of the contraction purchase price for this loan as a settlement between the parties." (<u>Id.</u> ¶ 43.) Although the settlement documents are not part of the record, it is difficult to imagine that the settlement did not contain a release of claims, and

thus these loans likely cannot be used to buttress any claims RFC has in this litigation.  This leaves RFC with only a single "example" loan as to Hometown.

RFC's allegations with respect to Hometown's loans are similar to those discussed above with respect to Embrace.  RFC contends that approximately 40% of the loans Hometown sold to RFC "sustained losses, totaling $31 million." (Id. ¶ 39.)  Again, the fact that a loan might have sustained a loss does not necessarily mean that the loan was defective. The Amended Complaint goes on to allege that RFC performed an internal review and determined that "hundreds of loans [Hometown] sold to RFC . . . violated the Client Guide and/or other representations or warranties." (Id. ¶ 41.)  Indeed, according to the Amended Complaint, more than 70% of the loans RFC reviewed were deemed defective. (Id.)  But despite RFC's internal review, the Amended Complaint provides no specificity as to the defects or the loans at issue.  As with its claims against Embrace, RFC must re-plead its claims against Hometown.

The last loan Hometown sold to RFC was February 28, 2007.  Having determined above that claims arising out of loans sold before May 14, 2006, are untimely, this means that RFC may only pursue its breach of contract claims against Hometown for nine months' worth of loans, and must re-plead to more specifically inform Hometown about the loans and defects RFC has found.

Hometown makes two arguments that Embrace does not raise.  First, Hometown contends that RFC's indemnification claim is untimely.  Hometown's attempts to distinguish on-point precedent from the Minnesota Supreme Court, however, is unavailing.  That court

held that the statute of limitations on an indemnity claim "accrues when 'the party seeking indemnification has made payment to the injured person.'" Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n, 538 N.W.2d 692, 695 (Minn. 1995) (quoting 54 C.J.S. Limitation of Actions § 207 (1987)).  This holding did not depend on the specific facts of the case, which involved the Minnesota No-Fault Automobile Insurance Act, but rather was based in the common law of indemnity:  "Under the common law, the right of indemnity does not accrue until the liability of the party seeking indemnity 'has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment . . . .'" Id. (quoting 54 C.J.S. Limitation of Actions § 207 (1987)).  Thus, not only did the statute of limitations not begin to run until RFC paid the investors' claims, but RFC could not have sought indemnification from Defendants before that date.  The statute of limitations does not bar RFC's indemnification claims.

Second, Hometown argues that RFC has failed to sufficiently plead that it performed all conditions precedent, namely that RFC gave Hometown notice and an opportunity to repurchase the loans or cure the defects in those loans, as Hometown contends the parties' agreements required.  But even if the parties' contract required notice and opportunity to cure, which is doubtful, the Amended Complaint states that it performed "all conditions precedent to the relief sought in this action."  (Am. Compl. ¶ 35.)  Rule 9 requires nothing more.  See Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").  The Amended Complaint will not be dismissed on this basis.

14

As with RFC's claims against Embrace, the breach-of-contract claim for loans sold before May 14, 2006, will be dismissed with prejudice, and RFC's remaining claims will be dismissed without prejudice.

### 3.     Circle Mortgage, 13-3545

The Amended Complaint alleges that Circle Mortgage sold more than 200 mortgage loans to RFC over the course of the parties' relationship.  (Am. Compl. ¶ 4.)  RFC purports to attach a list of those loans to the Amended Complaint as Exhibit C, but as Circle notes, only one of the two "example" mortgages referenced in the Amended Complaint is included on Exhibit C.

As with Embrace and Hometown, RFC's allegations against Circle are extremely broad.  "A number of the loans" Circle sold to RFC "eventually sustained losses" of more than $7 million.  (Id. ¶ 37.)  And RFC's "internal reviews" determined that "many of the loans" Circle sold to RFC were defective.  (Id. ¶ 39.)  The defects "varied, but included income misrepresentation, employment misrepresentation, and undisclosed debts, among others."  (Id. ¶ 40.)  And as with the Embrace and Hometown allegations, RFC contends that "a number of loans defaulted very shortly after origination . . . which is widely recognized in the industry as often signaling fraud or other problems in the origination and underwriting of the loans."  (Id.)

These allegations are insufficient to inform Circle of the claims against it.  As with the claims against Embrace and Hometown, RFC's breach-of-contract claim for loans sold before May 14, 2006, will be dismissed with prejudice, and its remaining claims dismissed

without prejudice.

**CONCLUSION**

RFC is barred from pursuing breach-of-contract claims for loans sold more than six years before the date of its bankruptcy filing.  Its remaining claims do not allege "enough facts to state a claim to relief . . . ." Twombly, 550 U.S. at 545.  As such, they must also be dismissed.

Accordingly, **IT IS HEREBY ORDERED that**:

1.  Embrace Home Loan's Motion to Dismiss (Docket No. 28 in 13-3457) is **GRANTED in part** and **DENIED in part**;

2.  Hometown Mortgage Services, Inc.'s Motion to Dismiss (Docket No. 34 in 13-3509) is **GRANTED in part** and **DENIED in part**;

3.  Circle Mortgage Corp.'s Motion to Dismiss (Docket No. 31 in 13-3545) is **GRANTED in part** and **DENIED in part**; and

4.  Count One of each Amended Complaint (Docket No. 27 in 13-3457; Docket No. 34 in 13-3509; Docket No. 28 in 13-3545) is **DISMISSED with prejudice** as to loans sold before May 14, 2006, and **DISMISSED without prejudice** as to loans sold thereafter; and

5.  Count Two of each Amended Complaint is **DISMISSED without prejudice**.

Dated: June 18, 2014

                                                  s/ Paul A. Magnuson
                                                  Paul A. Magnuson
                                                  United States District Court Judge